Eli v. Faush v. Tuesday Morning, Mr. Eli and Mr. Leslie. May it please the Court, Wayne Eli for the appellant plaintiff, Matthew Faush. And unfortunately, I'm not a party in the case, Your Honor. I'd like to reserve five minutes for rebuttal, if I may respectfully request that. Thank you, Mr. Eli. Five minutes for rebuttal. I want you to know it's just a coincidence we scheduled Tuesday morning on Tuesday morning. I actually didn't think of that until just a second, but it is fitting. Your Honor, this is a simple case or a complex case, depending on how you look at it. Obviously, you're aware the district court found on a summary judgment motion on a very limited issue that Tuesday morning was not Mr. Faush's employer. Obviously, we contend, as we discussed in our brief, that there's ample evidence. Whether you apply the In re Enterprise test that was recently announced by the Third Circuit or if you apply the Darden test, there's enough evidence here for a jury to conclude that they were his employer. But didn't we say in In re Enterprise that that test was unique to the FLSA and that with the definition of employer that is much narrower in the Title VII context that the FLSA is really not even persuasive as to how we would interpret it in the Title VII context? I would agree that there is no more expansive definition of the word employer than that that appears in the FLSA. In fact, I think the Supreme Court has said that on at least one occasion. But that does not mean that the definition in Title VII is restrictive. That definition itself is very broad. And given the fact that Title VII obviously is a remedial statute and is intended to be far-reaching and broadly applied, the definition of employer should be just as broad under that statute as under the FLSA. The other interesting thing, Judge Krauss, is the tests as they're laid out are not that different. I mean, the Darden test as one of its three factors is who paid the plaintiff. Clearly, we don't have that in this case. That's the one factor we don't have in Darden. The Enterprise case looks at who had, I believe it was employee records. But other than that, it comes down to who can hire and fire and who can control the employee. And when you look at the facts of this case and the admissions made by Mr. Davis, the manager who we deposed on the limited issue of employer status, it's impossible to reach any conclusion other than the fact that Tuesday morning controlled the plaintiff's employment. But don't you reach the opposite conclusion on the first prong of hiring and firing? Not necessarily, and I can cite some evidence to that. Mr. Davis testified that the regional manager of Tuesday morning had the authority to tell employees to leave and not come back. Okay, that's accurate. And the record doesn't appear to show what happened to Mr. Fausch after he left Tuesday morning. I don't know whether that's crucial or not, but let's assume for a second that he wasn't fired. He just went back to labor ready to be placed somewhere else. Well, I would assert, Your Honor, that given the fact that he was told to leave and not come back, that his employment was terminated by Tuesday morning, and Tuesday morning was his employer. When someone says, leave, don't darken my door again. So you would argue that the fact that Tuesday morning said what you said they said constituted at least firing them from working for Tuesday morning? Correct, and I think there's enough there for a jury to conclude that, which I think is really where the focus should be on the summary judgment motion. Okay. There is a concept called the borrowed servant doctrine. Are you familiar with that? I am, Your Honor. Could you talk about it? I don't think it's in your papers. I assume you're talking about it in tort law. It was made by a Supreme Court in a number of cases, and perhaps Darden was one of them. Are you referring to common law tort cases or? The borrowed servant doctrine. Right, I know it comes up in a number of areas. My familiarity with it is in common law tort cases. Okay. Or even in workers' compensation. Does it have any relevance? I don't think it does because the tests are clearly enunciated. And what I found interesting about both of them, as I said, is they really do overlap to a large extent. But I think we would all agree the most important factor, whether it's Darden or Enterprise, is who controls the employees' day-to-day activities. Are they really the same? I mean, are you asking us to find that Tuesday morning was a joint employer? I think it would be very helpful for employees and employers if there was one test in federal law for who is an employee and who is an employer. I don't think that's the state of the law. When I went back and started looking at it, it's really all over the place, depending on the cases. But they are really different tests. I mean, the question of whether somebody is an employee versus an independent contractor, that's one test. If you're a home repair person and you have your home repair business and you go around and you work for individuals at their homes, you're an independent contractor. That's sort of the Darden test. That's the Darden test. But the question of the joint employer test is you can be an employee of Labor Ready and you can be an employee of Tuesday morning. Correct. Okay. So the tests might be different. They might work together in this case and they've been cited, such as in the Plazo case. There is a dual analysis of both standards. But the question is where you fit in. How do you get Tuesday morning to be the employer slash joint employer? Well, picking up on your point, Plazo talks about the fact that there's no magic formula or precise formulation. The Darden opinion said the same thing. And in a case, again, if you look at it, it's no control that I think Plazo was emphasizing. That plaintiff clearly was not being controlled by, I think it was BMC was the employer that she was targeting. She was controlled by her own employer. In this case, you have a written agreement between Tuesday morning and Labor Ready where not only does Tuesday morning agree to control Mr. Fausch and the temporary employees, but Labor Ready puts language in that agreement that says we are not controlling them. You are controlling them. That's spelled out in this case very clearly. The idea of compensation is a significant factor in the Darden test, but that cuts against you, doesn't it? Yeah, it definitely does. There's no question that the first Darden factor, the compensation, cuts against us. But I would argue that the hiring and firing and the day-to-day supervision definitely go in our favor. Wait a minute. I'm sorry. Hiring and firing and day-to-day. I understand the day-to-day supervision. Right. How do you get hiring and firing to work in your favor? There is testimony in the case that the regional manager could instruct employees to leave and not return, and there is also language in the Labor Ready contract that says. Do you consider that to be hiring and firing? I consider that to be hiring and firing. I consider that to be sufficient under Rule 56 for me to make that argument to a jury and allow the jury to determine if that factor is present or not. I think that's one of the reasons the district court, there was enough evidence here, to send the issue of employer status to the jury. When you look at, I think there have been four Third Circuit cases since Darden that have addressed this issue, I don't think you see the indicia of control in any of those opinions that you do in the case we have in front of us here. That written agreement in particular that we cited in our brief and that's attached in the record, I can refer to it if the court would like to hear it, specifically says not only is Tuesday morning in control of these employees, Labor Ready is not taking any direct supervisory role in doing anything with them. The agreement seems to include that FALCHA can't perform any work without Tuesday morning's prior approval? That's correct. The prior written approval is required to expand beyond the scope of what's in there? That's correct, Judge. But the other thing I would point out is that he was performing work identical to that of Tuesday morning's own employees. And the manager, Mr. Davis, testified to that. And we've outlined in the record where that is. He was no different, in Davis's mind, than a regular employee. He trained him just the way he would have trained a regular employee. Supervised him directly most of the time. When he wasn't there, he had an intermediary do it. But there's no question in this case on this record that there's no evidence that Labor Ready was telling this guy what to do once he arrived at Tuesday morning's premises. Tuesday morning had complete control over that. Isn't that the nature of all temp work? It is, which raises another interesting question. As you see more and more temp agencies out there providing employees, it's a large area of possible discrimination that would not be remedied by Title VII if it is not covered. You could even envision a situation where a clever attorney might construct a corporate structure that would completely protect one company while exposing a staffing company. What support, I mean, if what you're asking us for is a sort of categorical rule that the temp employment context involves joint employment or joint employers, what authority in our case law are you pointing toward to even import the joint employer concept to Title VII? Other than the two cases I cited in our brief that there were two district courts that referenced that standard under discrimination cases, I don't believe it's been applied yet. I checked again yesterday and I didn't see anything new. I would point to those two cases and point out again that the standards do overlap largely. They are not that different. If you put compensation into the enterprise standard or you put control of employee records into the Darden standard, they're almost the same. But both of those cases, those district court cases, concluded on similar facts to the extent of the nature of that control that there wasn't an employer relationship, right? Given the fact that there was no written contract, the difference in our case is the written contract that specifically says Tuesday morning you are controlling this employee and we are specifically disavowing control. That language is in the contract in black and white. Thank you, Your Honors. Mr. Luxen? May I approach? Yes. My name is Robert Luxen. I represent the appellee Tuesday morning. Your Honor, I would like to address the control question because that was a subject that you had questions for counsel on. And I think the summary judgment clearly, evidence clearly establishes that Tuesday morning did not have the necessary control over Mr. Fosh when he was assigned to work the 10 days that he worked at Tuesday morning's store. You know, Mr. Davis testified that the work assigned to temporary employees was no different than the work that's assigned to his own employees. Yes, sir. That is correct. So attempts are treated just like employees. Well, there's a difference, Your Honor. There's an important difference. And that is this, the temporary employees were assigned to work the store only for the purposes of setting up the store. The summary judgment record clearly establishes that Tuesday morning had already hired the employees that were going to work at the store and that Tuesday morning only intended to use the labor-ready employees to assist with the setup. It never intended to use any of those employees after the store opened. And, in fact, none of them were hired. Your statement goes completely against what Mr. Davis testified to. Well, they did the same work during the setup phase, but Tuesday morning did not hire these employees to work at the store once it was opened. They had already hired their employees to do that. The Tuesday morning hired the labor-ready employees only to assist with the setup of the store. And, in fact, none of the labor-ready employees were hired and worked at the store after it opened. Now, the control issue, I think – What difference does that really make to the claim that's been brought here by Mr. Foch? Sure. One of the factors that Darden lists is whether the work being performed is part of the regular work of the company where they're assigned to work. And, in this case, we would argue that it was not. They were only hired for the limited purpose of help setting up the store. The regular business is the retail operation and selling merchandise to the public. This was just one specific part to help the store get ready. And when it opened, their job and their role was done. Tuesday morning signed an agreement with labor-ready. Yes, sir. Part of the agreement provided – expressly pledged – I should say Tuesday morning expressly pledged that it would comply with Title VII and to provide a workplace free from discrimination. Yes. That's exactly what the plaintiff in this case is saying. It was not free of discrimination. I mean, isn't the plaintiff in a sense a third-party beneficiary of this contract and this provision? Well, in this sense, Your Honor, certainly labor-ready had an obligation because it was the employer of Mr. Foch to only assign him to areas where there was not going to be any discrimination and where the companies were going to comply with Title VII. No, but he's claiming it was not free of discrimination. It was discriminated against contrary to the agreement between the parties. And I understand, Your Honor. But, again, what we have is the cases in this circuit that have looked at the relationship between the individual that was assigned to work and the place where they were assigned to work looked at all of the factors of the relationship and not just one specific factor but really looked at the totality of the relationship. And that's what we think in this case clearly shows that the totality of the relationship is that there was not sufficient control that Tuesday morning had over Mr. Foch when he was at the store. But in looking at the totality of the relationship, you acknowledge that one of the things we have to look at is the agreement. That is absolutely true. Okay, so without an agreement, their case would not be as strong. With the agreement, there's at least the question that you agreed with labor-ready to comply with Title VII. We agree that. I admit that. That's true. But also the agreement has specific limitations on the type of work that can be assigned to Mr. Foch. He was not allowed to be alone or to be entrusted with property, with cash, with credit cards, with the store. He was not allowed to operate any machinery or equipment or operate automobile. There's no question that Mr. Foch and others who labor-ready supplied at that time were there for a limited purpose, getting the store set up. Yes, sir. Okay. I mean, the question here is in doing that work, were they your employees? Correct. Okay. So, I mean, we don't necessarily have to look at everything that Tuesday morning does. But in this case, we have to look at what the Tuesday morning did with the employees that were supplied by labor-ready. That's correct. And, again, you start with the relationship that Mr. Foch was employed by labor-ready. And the difference here is there's no question that that was an employment relationship. This is just one limited assignment that labor-ready made for 10 days to work help setting up the store. Is this a Darden or Enterprise type analysis? I think it's a Darden analysis. And I think the Darden is the appropriate analysis. Darden was a case that was an ERISA case that has the same definition of employee as is in Title VII. The joint employer tests typically come from either an FLSA case or a National Labor Relations Act case where there's a different definition of employer, employee. I think the Darden case is the appropriate test. I think having just one test brings clarity and certainty to the law. And I think this Court has recognized, certainly in the Plasso decision, when it announced that in determining whether a temporary employee is the employee of also the entity where they're assigned to work, that the Darden test would be used. So essentially what you're saying is that, in this case, labor-ready supplied for Tuesday morning a whole group of independent contractors. No. These were labor-ready's employees. They were labor-ready's employees. And this was just one. But as it relates to Tuesday morning, your client, they were supplying a whole group of independent contractors. If you're applying the Darden test, because that's what Darden determines, is are they independent contractors vis-a-vis the entity that the employee is claiming, making a claim against. Well, I understand your question. I guess I would look at it and say the result of the Darden test is to determine whether or not someone was an employee. And in this case, the result of the Darden test is that Mr. Fosh was not an employee of Tuesday morning. But therefore an independent contractor. That's what Darden speaks of. That is correct. Okay. So my point is, don't you then have to jump to another test? You have to really look at this other test to see whether or not, under circumstances existing here, that Tuesday morning was the joint employer of Fosh and others. And again, I understand your question. And I guess I would respectfully disagree that you need to do anything beyond Darden. So you'd stay with Darden? I would stay with Darden. Okay. I understand. All right. That answers the question of whether Mr. Fosh was an employee or not. Even though in Plaza, in that opinion, although it was not presidential, in Plaza they looked at both tests. And they evaluated Plaza's claim under both tests. Yes, sir. And the reason for that is because the district court had also looked at the relationship under both tests. And so on appeal, the plaintiff had alleged that the district court erred under both tests, under both the Darden test and the joint employer test. But in Plaza, the court starts out with saying that in looking at this issue of whether a temporary employee is the employee of the place where they're assigned to work, we look at the Darden test. And it made its analysis. Then it also said that we reviewed the district court's decision that the plaintiff also was not an employee under the joint employer test. If we accept your analysis of the law to be applied here, what is a person like Mr. Fosh to do? Who was clearly discriminated against by somebody. You know, essentially no blacks allowed here. Well, I mean, what is he to do? He certainly can't go back to labor ready. Labor ready didn't do that. First of all, we would dispute there was any discrimination. But secondly, in general, a question of does a temporary employee have any remedy against the place where they're assigned to work? I think you have to start out and say the first part of that answer to that question is you have to look at the language in Title VII and see whether they fit into Title VII's definition of employee. But secondly, yes, they may have claims under common law against the place where they're assigned to work, possibly for assault or intentional infliction of emotional distress, maybe even false imprisonment. They may have a claim against their employer, the temporary staffing agency, for assigning them to work at a place where there was alleged discrimination. So it's not a situation where they would not have a remedy. It's just that they would not have a remedy under specifically Title VII, and in this case the State Employment Act in 1981 as well, because they do not meet the relationship between the two, does not meet the test for an employee under Title VII. You agree the contractual relationship between the parties is sufficient? You both agree that you would abide by Title VII? That is correct. That is correct, Your Honor. You don't think that affords a basis for Mr. Farr? In this case, no, because, again, the analysis is not the contract doesn't create the right. It's whether Title VII creates the right, whether he meets the definition under Title VII of an employee. That would determine whether or not he could pursue that claim. Why should we limit our analysis here to a single employer? That's not what Helen is arguing. They're arguing for the recognizing that there is a relationship with the temp agency, but also arguing that there's a joint employer kind of relationship here because there's sufficient control exercised by Tuesday morning. Doesn't Graves v. Lowry provide some support for the idea of bringing the joint employer test into Title VII, and why as a matter of principle or law, why wouldn't we consider that where there is sufficient joint control to have that with a temporary employment agency? Certainly, Graves does, and I agree with you on that. But I guess I look at the most recent case, Plasso and Prother and Shaw as well as Scott, where they used primarily the Darden analysis. And again, that's where I think the right analysis is. Now, in this case, the plaintiff has alleged that the district court erred. The district court also made a decision under the joint employer theory in this case that Mr. Fosch was not an employee of Tuesday morning. So certainly, in reviewing the district court's decision to see whether it was an error, I do think that the court would have to do an analysis of the joint employer theory. But I guess my point going forward is what is the appropriate standard to determine whether an employee of a temp agency that is assigned to work at a company, whether that individual is an employee of the place where they're assigned? I think the Darden analysis is enough. But in this case, because the district court did an analysis just like in Plasso under both tests, I think it's appropriate that it would be done under both tests. We haven't addressed this precedentially before. I'm sorry? We haven't addressed this issue precedentially before in a precedential opinion. Right. In terms of whether one should be used exclusively or whether both should be used, the answer to that question is no, I cannot find that. Mr. Waxman, the Equal Employment Opportunity Commission has issued a guidance, and that guidance provides that staffing firms and the client's staffing firms, such as Labor Ready, and the clients to whom they assign workers may not discriminate against workers on the basis of race. It seems to cover the situation here. Shouldn't we give this guidance some degree of deference in assessing Mr. Fosch's discrimination claim? Well, again, that doesn't have the force and effect of law, number one. It doesn't. But number two, again, whether Tuesday morning had an obligation in regard to Mr. Fosch, the question is you look at the definition of employee under Title VII, and Darden and even the joint employer test do the same thing. They look at the facts. They look at the relationship to determine whether or not there was and he is an employee. So in not every situation where someone is assigned to work as a temporary employee, would they be covered under Title VII. That's the purpose of the tests, to look at the specific facts to determine whether there is enough of a relationship, whether there is enough control to establish that the person would be an employee for purposes of Title VII. If we're looking at a joint employer context, then surely some of the factors that go into defining what an employer is are going to be reduced for one or the other. Isn't that the whole concept of joint employment means that there will be some responsibilities or some level of control that is not going to be exercised by one where it's exercised by the other. Those responsibilities of employer are being divided between two entities. So when we're looking, if we look at the facts here under a joint employer test, aren't we in fact using a lower standard than we would under Darden alone? I acknowledge that they're similar. There's no question about that. Now, to me, the joint employer, there's case law that talks about what it's trying to determine is whether two different employers share or co-determine the terms and conditions of employment. And in this case, there's absolutely no evidence of sharing or co-determining the terms and conditions of employment. Whether it's a lower standard, I wouldn't characterize it as that. I would characterize it just as a slightly different standard. But again, because there's so much duplicity in what they look at, and given what this Court has previously said about Darden, I think that Darden is the appropriate one to look at. You know, I think Mr. Davis was in a position to establish the conditions of employment for Mr. Fausch. Was he in a position to establish the conditions? Conditions of employment, yes. No, he wasn't. He was assigned by his employer, labor-ready, to go do this specific set of tasks. I didn't think you would agree with me. I thought I'd ask you anyway. Thank you. Thank you, Your Honor. Thank you. Mr. Ely? The Court hit the nail on the head talking about the sharing of the employment relationship. And I have to disagree with opposing counsel that there's absolutely no evidence in this case of that. If you look at 55 and 56A of our appendix, that contract divvies up employment duties between labor-ready and Tuesday morning. For example, Tuesday morning pays workers' compensation insurance. And I believe, Judge Fuentes, you asked me about the borrowed servant doctrine and something counsel said just made me think that in the context of workers' compensation, all of the claims he just said Mr. Fausch would still have under the common law would largely be barred if Tuesday morning argued we were actually his employer, we were providing the workers' compensation insurance. So he doesn't have a common law tort claim. In Pennsylvania, you can't sue your employer for negligence. Your remedy is your workers' compensation insurance, which, if you look at 56A, Tuesday morning supplied that, not labor-ready. So they're coming in and saying he's not our employee, but we've agreed in these two pages, 55A and 56A, to supervise him. We've agreed labor-ready will not supervise him. We've agreed we're providing workers' compensation insurance. And an excellent point the Court brought up, we've agreed we're going to comply with applicable anti-discrimination law and provide a safe workplace. Well, their answer to that is, well, if there was a duty on the part of labor-ready to only assign him to areas free from discrimination, that makes absolutely zero sense, when they've already said they're not supervising him. They had no idea what was going on at that workplace, and someone has to bear responsibility when they discriminate against an employee. He has to have a remedy, because if he doesn't, Title VII is being gutted to the extent it would apply to a large class of employees, who would be found to be tempts. Unless there's any other questions, I'll rest with that. What would happen if he were injured at the site, physical injury? Based on this contract? Yes. He would probably apply for workers' compensation. What would he say? Just thinking it out, he'd file a workers' compensation claim against? He would have to file the claim against Tuesday morning, I believe. I'm not an expert on workers' compensation. I was just wondering if their position would be, you can't sue us because you're our employee. I think that's exactly what they would have said. It would be totally contradictory to the position you're taking here. I believe that's correct, Judge Fuentes. I thought it was in the briefs that, in fact, labor-ready is paying for that insurance, and so that claim would need to be made against labor-ready, not Tuesday morning. Is unemployment, disability, all of that covered through labor-ready? I may have misheard. It says suppliers shall provide workers' compensation insurance. But given the fact that he's working there, they could still assert that they have the coverage of the Workers' Compensation Act, were he to try to bring it to work case. So I misspoke to that extent. But if he sued them for negligence, I guarantee they would assert the workers' compensation bar and give all the reasons I'm giving why he's an employee in defense of that claim. Mr. Pistri, you argue the summary judgment was inappropriate because of material disputed facts. Correct. What are those facts? Do those go to the employer status, or are there some other disputed facts that you're suggesting? They go directly to employer status. The court limited our discovery in this case just to the issue of employer status, and that was the only discovery that was conducted before the filing of the motion. And those issues are what we've been discussing, the control, the fact that they had the right to send him from the workplace. All of the factors, whether you take Darden, Enterprise, or a combination of both. So what material facts are disputed? The facts that they controlled him, that they could send him from the workplace. But essentially, and you see this in the Darden case, you see it even in the Plezo opinion from the Third Circuit, the control is really where the rubber meets the road in this case. And that's really the disputed factor. Did they control him sufficiently to enable them to be considered an employer? And I think when you look at all the facts, particularly this written agreement and the testimony of Mr. Davis, the store manager, there can be no question that at a minimum there was a genuine issue of material fact on that. Thank you, Mr. Elias. Thank you. And, Mr. Luxon, thank you very much.